GEO. C. BAGLEY ELEVATOR COMPANY v. AMERICAN EXPRESS
COMPANY.[1]

December 12, 1895.

Nos. 9582—(192).

**Warehouseman—Failure to Deliver Goods.**

Where personal property is delivered to a warehouseman, who fails to deliver it upon demand, these facts constitute prima facie negligence on the part of the warehouseman, unless he shows that the goods were lost or stolen, and the manner of such loss or theft, which facts he must prove with reasonable certainty.

**Same—Negligence.**

Negligence will not be presumed, in case of loss or larceny of personal property while in the custody of a warehouseman, when he has fairly shown that he used due care in keeping the property committed to his charge and control, and in such case the owner of the property cannot recover unless he shows that the loss or theft occurred through the negligence of the warehouseman.

**Verdict Sustained.**

Evidence considered, and *held* sufficient to justify the verdict.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J.,'denying a motion for a new trial.    Affirmed.

*F. F. Davis*, for appellant.
*Wilson & Van Derlip*, for respondent.

BUCK, J.    On September 17, 1894, the plaintiff, at the city of Minneapolis, delivered to the defendant, a common carrier of money, goods, and merchandise, the sum of $500 in United States currency, paid the defendants the charges for its conveyance to Wimbledon North Dakota, and took defendant's receipt therefor.    This package was directed to R. E. McGlachlin, who was the plaintiff's agent at Wimbledon.    The defendant, in the usual course of its business, carried the package to Wimbledon where it arrived at 9:15 o'clock p. m. on September 18, 1894, when it went into the hands of de-

[1] Reported in 65 N. W. 264.

fendant's agent, H. B. Whitla, who, soon after its receipt, saw the consignee and notified him of the arrival of the package, and that he had it at the defendant's office. On the morning of September 19 the defendant's agent saw the consignee, and again informed him that the package was still in the defendant's office, but he did not call for it until the morning of September 20, when he demanded the package of the defendant's agent, and he refused to deliver it to the consignee. His excuse for so doing was that the money had been lost or stolen. An action was commenced by the plaintiff for the recovery of the amount, and resulted in recovering a verdict for the value of the package, with interest. The defendant appeals from an order denying a motion for a new trial.

The court charged the jury that the evidence in the case showed that, as to the package in controversy, the relation of common carrier had ceased, and that the relation of the defendant to this package of money was simply that of a warehouseman. There does not appear to be any fault found with this part of the charge.

It appears from the evidence of the defendant's agent that, after the receipt of the money by him at Wimbledon, he kept it until the night of September 19, when he took it to his room upstairs, and, placing this package on the dresser, went to bed and never saw it again. The manner in which it disappeared does not appear. The agent testifies that he did not miss the money until the consignee called for it the morning of September 20. He gave no reason why he did not look on the dresser for it in the morning when he left his room; and when the consignee demanded it, between 8 and 9 o'clock a. m., instead of going to the dresser, where he had put it and last saw it, he commenced to look in his express case, and in several other places, and said to the consignee, "I don't know whether I have got any money for you or not,"—said he "must have sent the money away by mistake that morning." His brother slept in an adjoining room the night of September 19, and there was no evidence of any one having entered the room the night of the disappearance of the money. Nor does it affirmatively appear that any third party stole the money or carried it away, and there was no evidence that it was lost, except such as we have above stated. The room in which the agent slept does not appear to have been locked.

If it had satisfactorily appeared that the money had been lost

or stolen without any fault or neglect of the agent, an entirely different question would have arisen. The rule of law as to the duty and obligation of a warehouseman in cases of this kind is this: "If the plaintiff proved delivery of the goods to the warehouseman, and a failure to deliver on demand, these facts will be treated as prima facie evidence of negligence on the part of the defendant, unless he shows on his part that the goods were lost and the manner in which they were lost, and these facts must be proved with reasonable certainty." 28 Am. & Eng. Enc. Law, 649, and cases there cited.

If the defendant exercised reasonable care over the property in its custody, it could easily have shown this fact to the satisfaction of the jury. Negligence will not be presumed against a defendant in such case; but, if the property is lost or stolen, the burden is upon the defendant to show and explain such fact, and the manner it was lost or stolen, and that he has used due care in keeping the property committed to his charge and control. When these facts are made out, the plaintiff cannot recover unless he shows that the loss or theft occurred by the negligence of the warehouseman.

Applying this rule to the case at bar, there cannot be any doubt but that, upon all the facts, it was properly submitted to the jury. The plaintiff proved a prima facie case, and, under proper instructions from the court, the questions of due care and negligence on the part of the defendant were properly submitted to the jury.

The evidence fully justified the verdict, and the order denying the motion for a new trial is affirmed.