**David Gary COLWELL, Appellant,**

v.

**METROPOLITAN AIRPORTS COMMISSION, INC., et al., Respondents.**

No. CO–85–2110.

Court of Appeals of Minnesota.

April 22, 1986.

John C. Dunlap, Minneapolis, Gerald M. Linnihan, St. Paul, for appellant.

Keith D. Simmons, Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., SEDGWICK and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

David Gary Colwell appeals a summary judgment ruling that respondents owed no duty to safeguard appellant's vehicle in the self-park airport parking lot. We affirm.

### FACTS

On July 5, 1983, David Colwell (appellant) entered the long-term parking facility at the Metropolitan Airport Commission's premises at the Minneapolis/St. Paul International Airport. Upon entering, he received a ticket from a dispensing machine. The ticket noted the date and time of entry and also contained a disclaimer of liability. Appellant parked near the terminal, locked and left his 1971 Volkswagen camper. He left the garage ticket hidden in the camper.

On July 17, 1983, the camper was removed from the parking lot by a person or persons unknown. Appellant sued the airport commission under theories of bailment, negligence and contract.

The trial court rejected appellant's contract and bailment claims, stating there was "no agreement between the parties either express or implied that Defendant

would safeguard Plaintiff's property. The transaction was solely a lease of space."

The court also rejected the negligence claim, stating there was no duty to safeguard the camper.

Summary judgment was granted in favor of respondents.

## ISSUE

Did the trial court err in granting summary judgment in favor of respondents?

## ANALYSIS

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. The district court must view the evidence in the light most favorable to the nonmoving party, and this court on appeal must view the evidence most favorably to the one against whom the motion was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982) (citations omitted); *see Woody v. Krueger*, 374 N.W.2d 822, 824 (Minn.Ct. App.1985).

When a motor vehicle is left in a garage or parking lot, the relationship between the garage operator and the vehicle owner may be one of bailment, lease, or license, depending upon the circumstances of each case. 38 Am.Jur.2d, *Garages, and Filling and Parking Stations*, § 28 (1968).

Generally, a bailment is created where the operator of a garage has knowingly and voluntarily assumed control, possession or custody of the vehicle; if the operator has not done so, there may be merely a license to park or a lease of parking space. *Id.*

As a bailee for hire, the garage operator, although not an insurer of the vehicle left in his care, is bound to use reasonable care in safeguarding the vehicle. *Id.* at § 29.

In the absence of bailment, the vehicle owner is often faced with the difficult task of showing specific acts of negligence by the garage operator or his employees. Annot., 13 A.L.R. 4th 442, 447 (1982).

> [T]hree elements are necessary in order to create a bailment relationship: (1) Delivery without transfer of ownership; (2) implied or express acceptance; and (3) an express or implied agreement that the goods be returned.

*Ekholm v. Wilkins Dodge, Inc.*, 298 Minn. 62, 66, 212 N.W.2d 890, 893 (1973) (Otis, J., dissenting) (citations omitted).

A "bailment" is a relationship arising out of express or implied contract and is governed by contract principles. It is a contract created by the delivery of goods without a transfer of ownership on agreement that they be returned or accounted for. *Dennis v. Coleman's Parking & Greasing Stations, Inc.*, 211 Minn. 597, 600, 2 N.W.2d 33, 34–35 (1942) (citations omitted). In *Dennis*, a bailment was found where the plaintiff had been a regular customer at a parking garage, and on the day in question left his car with the keys in it. The attendant not only watched the cars as they came and left, but also greased cars, flushed radiators, changed oil and tires and did other minor maintenance. There was no system of issuing parking tags or tickets.

Different principles are applied to parking lot theft in the different states. Some continue to adhere to the traditional bailment analysis, holding the lot operator liable for damage or theft. *See e.g., Allen v. Hyatt Regency-Nashville Hotel*, 668 S.W.2d 286 (Tenn.1984) (commercial parking garage found liable for theft of a car from a lot which used machines to dispense tickets).

> In practicality the operator does assume control and custody of the vehicles parked, limiting access thereto and requiring the presentation of a ticket upon exit.

*Id.* at 290.

On the other hand, concern has been expressed that bailment principles are completely inappropriate to the modern parking lot situation. *See, e.g., McGlynn v. Parking Authority of Newark*, 86 N.J. 551, 432

A.2d 99 (1981) (Rejecting the bailment analysis, the court stated that whether the garage operator is under a duty to take reasonable steps to prevent harm to vehicles depends largely upon whether the risk of harm is reasonably foreseeable.).

Other courts find that the use of a modern parking lot does not create a bailment and do not find liability.

> The standards that were applicable to a liveryman should not be applicable to a parking garage where hundreds of cars are parked daily. * * * There are more automobiles in existence today, more and larger parking facilities and easier access to these facilities as a result of automatic ticket machines and other technological advances. No longer is entry into a lot or garage and the parking of a car dependent upon the presence of the owner or an attendant or an express agreement between the garage and car owner.

*Central Parking System v. Miller*, 586 S.W.2d 262 (Ky.1979); *see also Taylor v. Philadelphia Parking Authority*, 398 Pa. 9, 156 A.2d 525 (1959).

Several cases that discuss airport parking lots refused to find the airport liable under a bailment theory. In *Wall v. Airport Parking Co.*, 41 Ill.2d 506, 244 N.E.2d 190 (1969), plaintiff entered a public parking lot at O'Hare International Airport by accepting a machine dispensed ticket. The ticket did not identify him or his vehicle. The Illinois Supreme Court held that the transaction was a lease and did not find negligence.

Likewise, the New York appellate courts found no bailment where plaintiff entered a self-service lot at John F. Kennedy International Airport after receiving a ticket from a machine. *Ellish v. Airport Parking Company of America, Inc.*, 42 A.D.2d 174, 345 N.Y.S.2d 650 (1973), *aff'd.*, 34 N.Y.2d 882, 359 N.Y.S.2d 280, 316 N.E.2d 715 (1974).

Several factors were considered by the *Ellish* court, including the fact that a) the service provided by the lot was a space for the vehicle; b) the service was impersonal; c) the owner retained control, exemplified by locking the car and keeping the keys; d) the owner followed instructions on the ticket; e) the actual operation of the airport parking lot was apparent; and f) there was no proof of neglect. 42 A.D.2d at 177–78, 345 N.Y.S.2d at 653–54. *See Motors Insurance Corp. v. American Garages, Inc.*, 98 Misc.2d 887, 414 N.Y.S.2d 841 (N.Y.App. Term 1979).

Similarly, the Texas Court of Appeals found no bailment where a pickup truck was stolen from an airport parking lot which used a machine dispenser. *Ragland v. Allright Parking, Inc.*, 559 S.W.2d 858 (Tex.Civ.App.1977).

We continue to adhere to the principles enunciated in *Dennis v. Coleman's Parking & Greasing Stations, Inc.*, 211 Minn. 597, 2 N.W.2d 33 (1942), regarding the establishment of bailments.

The generally accepted test is whether there is a full transfer of the property, amounting to relinquishment of exclusive possession, control and dominion over the property for the duration of the relationship. *See Nelson v. Schroeder Aerosports, Inc.*, 280 N.W.2d 107, 109 (S.D.1979).

Here, there is insufficient evidence of delivery to constitute a bailment. Colwell kept the keys, and there was no evidence of a contract, express or implied to safeguard his vehicle. His assumption that the vehicle would be safe in long term parking does not create a bailment or a contract. Further, appellant alleged no facts indicating specific neglect.

Absent allegations of negligence or of a contract or bailment, there was no disputed material fact to be determined at trial. The trial court properly granted summary judgment on behalf of respondents.

## DECISION

We affirm the decision of the trial court.