23 So.2d 36

**COLGIN v. SECURITY STORAGE & VAN CO., Inc.**

**No. 37550.**

March 26, 1945.

Rehearing Denied June 5, 1945.

James W. Hopkins, of New Orleans, for plaintiff, appellee, and petitioner.

Weiss & Weiss, of New Orleans, for defendant and respondent.

PONDER, Justice.

The sole question presented in this review is whether or not a depositor is bound by a provision in a warehouse receipt limiting the liability of the depositary.

The plaintiff, Clarence H. Colgin, brought suit against the defendant, Security Storage & Van Company, Inc., seeking to recover the value of a mattress, an art square and certain articles contained in a cedar chest stored with the defendant. The purpose of the suit is to recover for the loss of these movables while on deposit with the defendant.

On trial, the lower court gave judgment in favor of the plaintiff for $709.50 with legal interest from January 2, 1940, until paid. On appeal, the Court of Appeal for the Parish of Orleans affirmed this judgment. The Court of Appeal reduced its original judgment on rehearing to $137.50. The reduction was brought about by the appellate court's holding that the defendant was only liable to the extent of $50 for the contents of the cedar chest under a provision in the warehouse receipt limiting the liability of the defendant to that amount. The plaintiff applied for and was granted a review by this Court.

The defendant, in its brief, asks for the writs to be recalled. This in effect is a request for the affirmance of the judgment. Such being the case, the only

question for review is the extent of the defendant's liability for the loss of the contents of the cedar chest.

There seems to be no controversy over the facts in the case. On October 31, 1938, the cedar chest was delivered to the defendant's warehouse by an independent drayman engaged by Mr. George Harang, brother-in-law of the plaintiff. Mr. Harang, at the time, notified the defendant by telephone that the chest was being delivered by the drayman. Mr. Harang called at the warehouse later in the day to settle a bill for storage on other property belonging to the plaintiff. He was informed at that time that the cedar chest had been received. Neither the drayman nor Mr. Harang was presented with a warehouse receipt. The defendant's office manager was present when the cedar chest was received, and on the same day mailed a warehouse receipt to the plaintiff's wife. On the face of the warehouse receipt, the following provision is printed in small type:

"The owner declares that the value of any article, piece, package or receptacle, including the contents thereof, packed, transported, received, handled or stored in this lot, does not exceed the sum of Fifty Dollars, and the value of any one load does not exceed Two Thousand Dollars, upon which valuations the rates shown below have been based, and the Owner, in consideration of said rates charged, agrees that the liability of the Company, for any cause which would make it liable, shall in no event exceed the sums so above declared, unless the Owner declares a greater value in writing, and agrees to pay an additional charge of ——— cents per month for each $100.00 or fraction thereof in excess of the sum above declared."

On the original appeal, the Court of Appeal arrived at the conclusion that the clause in the receipt limiting the defendant's liability was not binding on the plaintiff. Its finding was based on the holding in the case of Williams v. Gallagher Transfer & Storage Co., 170 La. 461, 128 So. 277. On rehearing, the Court of Appeal reversed its original judgment in this respect and held that the clause limiting the defendant's liability was binding on the plaintiff. Its holding to this effect was largely predicated on the finding in the case of Central Storage Warehouse Co. v. Pickering, 114 Ohio St. 76, 151 N.E. 39, 40, 142 A.L.R. 768.

The factual situation in the Gallagher case, supra, is so different from that of the present case, it has no application.

In the Pickering case, supra, the warehouse receipt was denominated on its face "warehouse receipt and contract," and contained the following admonition printed in red ink: "Read this receipt and contract carefully."

The receipt in the present case contains no such admonition. The receipt is not labeled as a contract. In the Pickering case, supra, the warehouse receipt was presented to the depositor at the time the goods were stored. In the present case, the warehouse receipt was mailed subsequent to the deposit.

"The voluntary deposit takes place by the mutual consent of the person making the deposit and the person receiving it." Article 2932, Revised Civil Code.

"The voluntary deposit can only be regularly made by the owner of the thing deposited, or with his consent expressed or implied.

"Consent is implied when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it." Article 2933, Revised Civil Code.

"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property." Article 2937, Revised Civil Code.

"The provision in the preceding article is to be rigorously enforced.

"1. Where the deposit has been made by the request of the depositary.

"2. If it has been agreed that he shall have a reward for preserving the deposit.

"3. If the deposit was made solely for his advantage.

"4. If it has been expressly agreed that the depositary should be answerable for all neglects." Article 2938, Revised Civil Code.

"The depositary ought to restore the precise object which he received.

"Thus a deposit of coined money must be restored in the same specie in which it was made, whether it has sustained an increase or diminution of value." Article 2944, Revised Civil Code.

"The depositary is only bound to restore the thing in the state in which it is at the moment of restitution. Deteriorations, not affected by any act of his, are to the loss of the depositor." Article 2945, Revised Civil Code.

■ Act 221 of 1908, Dart's Louisiana General Statutes, 9859 et seq., the uniform Warehouse Receipts Act of Louisiana, contains certain mandatory provisions and provides that a warehouseman may insert in a receipt issued by him any other terms and conditions which are not contrary with the stipulations of the act or do not impair the obligation to exercise that degree of care of goods entrusted to him which a reasonably careful man would exercise with regard to his own goods of a similar nature.

Undoubtedly, the depositor is charged with knowledge of the mandatory provisions of the act and the codal articles governing deposit. However, as to terms and conditions not mandatory but merely permissive, which redound to the benefit of the warehouseman, the depositor could not be charged with notice of such unless they are brought to his attention or he assents to them as a part of the contract between himself and the warehouseman. The act does not require the depositary to embody a condition limiting his liability but merely permits him to do so.

■■ A contract is implied by law when the deposit is received. To modify the contract implied by law, the special provisions must be either a part of the original contract or contained in an amendatory contract. In order for the special provisions to be effective, the assent of both parties

is necessary. One of the parties, without the consent of the other, cannot modify the implied contract. There must be a meeting of the minds of the parties to effectuate the special contract.

■ The limiting clause was not brought to the attention of the depositor, and we are at a loss to see how he could be charged with consenting to a limitation of defendant's liability.

From our research, we find the case of Brasch v. Sloan's Moving & Storage Co., Mo.App., 176 S.W.2d 58, to be more applicable than the cases cited by the parties to this suit. In the Brasch case, supra, the plaintiff called the defendant by telephone and requested it to come to her apartment and pick up some furniture for storage. In response to the inquiry, the plaintiff was merely told the amount of the monthly storage charge. Thereafter, the defendant mailed a warehouse receipt containing a clause limiting liability, similar to the one involved in the present case, which was not read by the plaintiff. The Missouri warehouse receipts act is identical with that of Louisiana. When the plaintiff called for her effects, some of them were missing. The court gave the plaintiff judgmment for the value of the lost articles. It was pointed out therein that the plaintiff was not bound by the limitation clause for the reason that she had not assented to it, and the limitation clause could not form a part of the contract between the parties in the absence of the plaintiff's assent.

In the case of The Majestic, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039, the syllabus which clearly states the holding of the case reads:

"A notice containing conditions, on the back of a steamship passenger's contract ticket, but not referred to therein, except by the words 'See back' printed on the face of the ticket does not form a part of the contract binding on the passenger as to the liability of the steamship company for baggage or otherwise, where the passenger's attention is not called to the conditions, and there is no proof that he ever read or assented to them."

■ The relationship of a proprietor of a parking lot toward his customers is that of a compensated depository. Articles 2937 and 2938, R.C.C. The decisions with respect to limitations of liability printed on the reverse side of parking lot receipts are to the effect that the limitations are not binding on the depositor unless they are called to his attention or he assents to their terms. Kravitz v. Parking Service Co., 29 Ala.App. 523, 199 So. 727, Writ of Certiorari denied 240 Ala. 467, 199 So. 731; also see, Agricultural Ins. Co. v. Constantine, Ohio App., 56 N.E.2d 687; Quinn v. Milner, to Use of Hartford Fire Ins. Co., D.C.Mun.App., 34 A.2d 259; Old Hickory Parking Corporation v. Alloway, 26 Tenn.App. 683, 177 S.W.2d 23; Dennis v. Coleman's Parking & Greasing Stations, Inc., 211 Minn. 597, 2 N.W.2d 33; Westchester Development Corporation v. Burkett, D.C.Mun.App., 38 A.2d 628; Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543; Kaiser v. Poche, La.App., 194 So. 464; Maynard v. James, 109 Conn. 365, 146 A. 614, 615, 65 A.L.R. 427; Marine Ins. Co.,

Limited of London, England, v. Rehm, La. App., 177 So. 79, also see, Roppolo v. Pick, La.App., 4 So.2d 839; Sandler v. Commonwealth Station Co., 307 Mass. 470, 30 N.E. 2d 389, 131 A.L.R. 1175; Munson v. Blaise, La.App., 12 So.2d 623.

It is suggested that a parking lot receipt is a mere token, and decisions with respect thereto are not applicable. The same principles of law, the same codal articles, are applicable to deposits of this nature.

The rule recognized in this State with respect to local transportation companies engaged in the transportation of baggage is to the effect that a provision on the reverse side of a baggage check limiting the liability of the carrier is not binding on the passenger unless it is called to his attention or he assents to it. Kendall v. Teche Lines, Inc., La.App., 197 So. 810; Lawes v. New Orleans Transfer Co., 11 La.App. 170, 123 So. 144.

The same rule has been applied to limitations of liability contained in bills of lading and receipts given for intrastate shipments. Baldwin v. Collins, 9 Rob. 468; Thomas v. The Morning Glory and Owners, 13 La. Ann. 269, 71 Am.Dec. 509; Kember & George v. Southern Express Co., 22 La.Ann. 158, 2 Am.Rep. 719; W. H. & C. B. Hodges v. Louisiana Ry. & Nav. Co., 180 La. 3, 156 So. 26. We are not unaware of the fact that a different rule applies to interstate shipments.

It is true that we have a warehouse receipts act, and that its mandatory provisions are binding, but the permissive conditions that might be inserted in a warehouse receipt could as well be inserted in any contract of deposit, provided they were assented to by the parties to the contract.

The Court of Appeal in its final decision in this case was of the opinion that at the time the deposit was made the parties contemplated the issuance of the receipt as a necessary part of the contract.

There is nothing in the evidence to show that the parties intended, at the time the deposit was made, that there would be any limitation placed on the liability of the defendant.

Counsel points out that the plaintiff had deposited movable effects with the defendant on other occasions and contends that the plaintiff was therefore cognizant of the fact that this limitation was included in the warehouse receipts.

The testimony offered on behalf of the plaintiff is to the effect that he did not read the small print on the warehouse receipt wherein the limitation of liability clause was included, and there is nothing in the record to show that the plaintiff had knowledge of the limitation contained in this receipt or in receipts issued when he made other deposits.

It is elementary that a contract arises only where both parties have agreed to its terms. Under the facts in this case, the plaintiff did not consent to the limitation. Moreover, where a depositary modifies the contract implied by law, it is incumbent on him to establish the special

contract. This the defendant has failed to do.

The defendant cites the case of Faultless Clothing Co., Inc. v. Branch Storage Co., Inc., 165 Misc. 658, 300 N.Y.S. 642.

In that case, the plaintiff had been shipping through the defendant for a considerable length of time and had at his place of business a book of defendant's blank receipts, containing the liability clause. One of these receipts was used for the shipment of the goods in controversy. The court, in view of these facts, arrived at the conclusion that the plaintiff, because of his long experience in the shipment of goods, knew that bills of lading contained various covenants and conditions and had had ample time to familiarize himself with the covenants and conditions. The holding is in effect that the plaintiff was charged with knowledge of the covenants under the peculiar facts of the case. The case is not in point with the instant case for the reason that the depositor herein did not expressly or impliedly consent to the limitation of liability.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is amended so as to award the plaintiff $709.50 with legal interest from January 2, 1940, until paid. All costs to be paid by the defendant.

O'NIELL, C. J., dissents.

ROGERS, J., dissents, being of the opinion that the decision of the Court of Appeal is correct. See 17 So.2d 478.